E-FILED
Wednesday, 10 June, 2026  02:31:11 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

BENJAMIN C.,

    *Plaintiff,*

v.

FRANK BISIGNANO, Commissioner of
Social Security,

    *Defendant.*

Case No. 1:25-cv-01341-RLH

## ORDER & OPINION

Benjamin applied to the Social Security Administration (SSA) for disability benefits in early 2023. His application was denied, and he appealed through the SSA's internal review process. That process concluded when an administrative law judge (ALJ) ruled in June 2025 that Benjamin was not disabled and thus not eligible for benefits. Benjamin filed this suit two months later.[1]

But this is no ordinary social security appeal. In most cases, the claimant offers one or more reasons why the ALJ was wrong—either on the law, the facts, or both. And in general, courts review that decision to ascertain whether "substantial evidence" supports it. 42 U.S.C. 405(g). Benjamin charts a different path. He does not challenge the ALJ's decision below but instead makes one abstract legal argument: The SSA violated the Administrative Procedure Act when it issued an internal ruling called "Social Security Ruling 24–3p."

---

[1] The parties have consented to final disposition of this case by a U.S. magistrate judge. (Doc. 14.)

Benjamin doubtless raises an interesting legal question. But he makes no attempt to ground that question in the facts of his case. He does not offer any reason why—even if this Court agreed with him—the ALJ who denied his application would have ruled differently. This omission is fatal: Article III courts cannot opine on abstract legal questions untethered to the disputes before them. The Commissioner's decision will be affirmed.

## DISCUSSION

### I.    Statutory and Regulatory Background

As the Commissioner observes (or concedes, rather), the "administrative structure and procedures" used by the SSA "are of a size and extent difficult to comprehend." (Comm'r Br. 2 (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).) That structure encompasses myriad sources of law. Three are relevant here.

There is, of course, the Social Security Act itself. *See* 42 U.S.C. §§ 301–1397mm. Although the Act defines who is eligible for benefits, *see* 42 U.S.C. § 423(d)(1)(A), it offers little guidance to the SSA about how to adjudicate individual applications. Instead, it entrusts the Commissioner with "exceptionally broad authority," *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987), to implement the Act's provisions by adopting "reasonable and proper rules and regulations," 42 U.S.C. § 405(a). In creating such regulations, the Commissioner must generally adhere to the Administrative Procedure Act's (APA) notice-and-comment procedures—a process in which agencies broadcast their intent to adopt a new rule and field public comments about it. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015). This notice-and-comment process applies whenever an agency adopts "substantive rules of general

applicability." *Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 168 (1st Cir. 2021) (quoting 5 U.S.C. § 552(a)(1)(D)).

Aside from federal statutes and regulations, the SSA also issues its own rulings: "Social Security Rulings" (SSR). SSRs are "interpretive rules intended to offer guidance to agency adjudicators." *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999). They "do not have the force of law or properly promulgated notice and comment regulations," but are nonetheless "binding on all components of the Social Security Administration." *Id.* (quoting 20 C.F.R. § 402.35(b)(1)).

Consider an example. The opinions of doctors and other medical sources play a crucial role in the SSA's decisionmaking process. But not all opinions are equally important. The regulations thus distinguish between the opinions of "acceptable medical sources" (like doctors) and "other sources" (like nurse practitioners). 20 C.F.R. § 404.1513(a). And they enumerate factors to consider in weighing the opinions from *acceptable* sources. *See id.* § 404.1527(d). But they do not say whether those factors apply to *other* sources. To fill the gap, the SSA long ago issued SSR 06–03p. *See* SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006). That ruling clarified that the SSA will apply the same regulatory factors to *all* medical opinions—regardless of whether they are authored by a doctor, a nurse, or someone else. *See id.* at *4–5.

In short, federal statutes establish the Act's broad purpose, regulations implement that purpose, and SSRs clarify how the SSA interprets the regulations.

## II.    Social Security Ruling 24–3p

Benjamin's challenge targets this third kind of source. He argues that SSR 24–3p—although couched as an "interpretative ruling"—actually "represents a seismic shift" in how the SSA decides individual cases. (Pl. Br. 5.) It is therefore a substantive rule that imposes new legal obligations on claimants and their representatives. Because the SSA did not follow the APA's notice-and-comment procedures before adopting it, Benjamin says, SSR 24–3p is void.

SSR 24–3p concerns the fifth and final step of the SSA's process for evaluating disability claims. To summarize, the first three steps ask whether the claimant (1) is working; (2) suffers from one or more severe impairments; and (3) possesses an impairment so severe that he is presumed disabled and unable to work. *See* 20 C.F.R. § 416.920(a)(4)(i)–(iii). After step three, the ALJ must determine the claimant's "Residual Functional Capacity"—that is, "the claimant's ability to do physical and mental work activities . . . despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Step four asks whether the claimant can perform her previous work. *See* 20 C.F.R. § 416.920(a)(4)(iv). If not, step five asks whether she can "successfully transition to less physically demanding work." *Biestek v. Berryhill*, 587 U.S. 97, 100 (2019).

Step five presents a unique challenge because it asks ALJs to speculate about jobs the claimant could hypothetically perform. It requires ALJs to "explor[e] two issues." *Id.* First, the ALJ must "identify the types of jobs that [the claimant] could perform notwithstanding his disabilities." *Id.* Second, the ALJ must "ascertain

4

whether those kinds of jobs 'exist[] in significant numbers in the national economy." *Id.* (quoting 20 C.F.R. §§ 404.150(c)(1), 416.960(c)(1)). "For guidance on such questions, ALJs often seek the views of 'vocational experts'"—"professionals under contract with SSA to provide impartial testimony in agency proceedings." *Id.* Vocational experts, in turn, "rely on a variety of sources and tools, as well as their knowledge of the job market, experience placing individuals in jobs, and surveys of employers." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024).

One of those tools—widely employed by ALJs and vocational experts alike—is the *Dictionary of Occupational Titles* (DOT). *Id.* at 1022. First published in 1939 by the Department of Labor, the DOT classifies "jobs into over 12,000 titles based on the tasks performed and industry designation."[2] And under the SSA's regulations, the DOT plays "a prominent role in social security hearings." *Weatherbee v. Astrue*, 649 F.3d 565 569 (7th Cir. 2011) (citing 20 C.F.R. § 404.1566(d)(1)). Sometimes, though, a vocational expert's testimony may be inconsistent with the DOT. *See id.* at 569–70. For example, imagine an ALJ limits a claimant to executing no more than "simple tasks." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1315 (11th Cir. 2021). A vocational expert then offers "document preparer" as representative of the kind of work the claimant could perform. *See id.* This would be problematic: Under the DOT, document preparation involves "level three" reasoning—that is "the ability to apply commonsense understanding . . .  and to deal with problems involving several

---

[2] *Classifying Jobs: From the Dictionary of Occupational Titles to the Standard Occupational Classification (SOC)*, U.S. Bureau of Labor Statistics, https://www.bls.gov/ors/factsheet/classifying-jobs.htm (last updated Apr. 4, 2025).

concrete variables." *Id.* at 1316. Some courts have held that this testimony creates a conflict. *See, e.g.*, *id.* ALJs may not limit the claimant to "simple tasks" and then conclude that they are capable of working as a document preparer.

To address problems of this sort, the SSA issued SSR 00–4p. That Ruling "require[d] ALJs to ask whether a VE's testimony conflicts with information provided in the DOT before relying" on it. *Weatherbee*, 649 F.3d at 569. If such a conflict was apparent, ALJs had an "affirmative duty" resolve it. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). It followed that "a claimant's failure to raise a possible violation of SSR 00–4p at the administrative level [did] not forfeit the right to argue later that a violation occurred." *Id.*

It turns out that SSR 00–4p created more issues than it solved. That's because asking ALJs and vocational experts to "identify and explain conflicts with the DOT is time consuming." SSR 24–3p, 2024 WL 5256890, at *2 (Dec. 6, 2024). According to the SSA, this requirement "led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified." *Id.* It also "discourage[d]" vocational experts "from using occupational data in sources other than the DOT." *Id.* Thus, in December 2024, the SSA rescinded SSR 00–4p and replaced it with SSR 24–3p. *Id.*

SSR 24–3p "continue[d] to recognize the DOT as a valid and reliable source of occupational information." *Id.* But it relieved ALJs of the duty "to identify and resolve conflicts between" expert testimony and the DOT. *Id.* Instead, as the Commissioner puts it, SSR 24–3p imposes other measures "to illuminate the vocational experts'

conclusions." (Comm'r Br. 6.) For example, SSR 24–3p permits vocational experts to rely on sources other than the DOT in estimating job numbers. *See* 2024 WL 5256890, at \*2. When vocational experts look beyond the DOT to estimate jobs, asking them to resolve conflicts with the DOT makes little sense—the DOT played no role in their testimony. *See id.* Rather, vocational experts must "identify the sources of the data they use and . . . explain their general approach to estimating job numbers." *Id.* at \*4. And if a vocational expert's source "defines exertion, education, or skill levels differently than [the SSA's] regulations," the vocational expert must "explain the difference." *Id.* Assuming a vocational expert "does not provide" this information of their own accord, ALJs must "develop the record with sufficient evidence" to support their step-five conclusions. *Id.* at \*6. Finally, SSR 24–3p now expects claimants' representatives "to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." *Id.* at \*4.

Benjamin takes issue with this final requirement. On his telling, SSR 24–3p "shift[s] a key component of" the ALJ's step-five burden "to claimants' representatives at the time of the hearing." (Pl. Br. 6–7.) This "forfeiture edict," Benjamin says, "creates a whole new framework" of "claimant representation" that "never previously existed." (Pl. Br. 11, 13.) Because SSR 24–3p was "not subject to the formal notice-and-comment rulemaking process," it is invalid. (Pl. Br. 7.)

## DISCUSSION

Benjamin's strategy suffers from two procedural flaws—one perhaps excusable, the other fatal. The first is that Benjamin omits any mention of the APA

in his complaint. Although this omission is unusual, the Court has found no authority to suggest that claimants waive arguments they do not forecast in their complaints. Second, and more problematic, Benjamin effectively asks for the Court's opinion about whether the SSA complied with the APA when it adopted SSR 24–3p. But Article III does not empower this Court to indulge that request.

The Commissioner observes, quite correctly, that Benjamin's one-page form complaint—common to social security appeals—says nothing about either the APA or SSR 24–3p. (*See* Doc. 1; Comm'r Br. 10 n.4.) And the Commissioner argues that Benjamin's challenge should be rejected on this procedural ground. The Court disagrees. Although APA challenges are rarely—if ever—brought in the manner that Benjamin has,[3] the Commissioner invokes no binding authority to support dismissal for this reason alone. It is settled that claimants may challenge the Commissioner's decision as either factually unsupported or legally unsound. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). And claimants do not forfeit legal arguments by failing to preview them in their complaints.

True, Benjamin does not argue that the ALJ committed legal error; he argues that the standard the ALJ applied was itself unlawful. Arguably, this type of claim is not authorized by 42 U.S.C. § 405(g), which limits judicial review to "final decisions" of the Commissioner. And the ALJ's decision becomes the Commissioner's final decision when, as here, the Appeals Council denies review. *Sims v. Apfel*, 530 U.S.

---

[3] Virtually all the APA challenges to SSA action this Court can find have been brought as independent suits, and most of them have been class actions. *See, e.g.*, *White v. Shalala*, 7 F.3d 296, 304 (2d Cir. 1993); *Wilson v. Sullivan*, 709 F. Supp. 1351, 1358 (D.N.J. 1989); *Bailey v. Sullivan*, 885 F.2d 52, 62 (3d Cir. 1989).

103, 106–07 (2000). Benjamin's § 405(g) suit is thus limited to challenging the ALJ's decision in his case—not the SSA's decision to adopt SSR 24–3p. *See Califano v. Sanders*, 430 U.S. 99, 108 (1977) (explaining that § 405(g) "clearly limits judicial review to a particular type of agency action"). This conclusion is reinforced by sentence four of § 405(g), which—the Commissioner says—authorizes courts to remand proceedings to the SSA only after issuing a "substantive ruling on the correctness of the SSA's decision." (Comm'r Br. 9 (quoting *Krishnan v. Barnhart*, 328 F.3d 685, 356 (D.C. Cir. 2003)).)

All that said, at least one other district court has entertained a similar challenge to the validity of an SSA regulation on a § 405(g) complaint. *See Hall v. Heckler*, 602 F. Supp. 1169 (N.D. Cal. 1985). Because this complex question of administrative law is shrouded in uncertainty, the Court will not reject Benjamin's challenge on this ground.

The bedrock problem with Benjamin's strategy is that his legal arguments are entirely academic. He makes no attempt to anchor his challenge to the facts of this case. Indeed, he does not explain how the ALJ applied SSR 24–3p here, nor does he argue that—had SSR 24–3p not been applied—the result would have changed. Such academic arguments are beyond the "limited jurisdiction" of Article III courts to entertain. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Benjamin violates two of those limits here.

First, "Article III's 'case or controversy' requirement prohibits federal courts from issuing advisory opinions that do not affect the rights of the parties before"

them. *Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1181 (7th Cir. 2020). Instead, a court's judgment "must resolve a real and substantial controversy" that calls for "specific relief through" a final judgment. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Thus, courts may not issue "opinion[s] advising what the law would be on a hypothetical state of facts." *Id.*

Benjamin's brief unabashedly seeks precisely that. He asks the court to offer its "judicial input" about whether the SSA's adoption of SSR 24–3p comported with the APA's notice-and-comment requirements. (Pl. Br. 21 ("Given the gravity of this issue and its mass applicability to SSA disability cases nationwide, it is Plaintiff's position that judicial input on the legality of SSR 24–3p is necessary.").) To be sure, Benjamin *also* asks the Court to "remand this matter" to the SSA for further proceedings. (Pl. Br. 21.) But he fails to connect the dots. He makes no showing that the result would be any different if the Court orders the ALJ to ignore SSR 24–3p on remand. In other words, Benjamin asks the Court to declare—in the abstract—that SSR 24–3p is unlawful. But such a declaration would have no effect on this case. It would therefore violate the cardinal principle that federal-court judgments must resolve actual cases or controversies—not academic debates. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("Courts do not opine on legal issues in response to citizens who might roam the country in search of governmental wrongdoing."); *see also TransUnion LLC v. Ramirez*, 549 U.S. 413, 423 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes."); *In re Outboard Marine Corp.*, 304 B.R. 844, 859 (Bankr. N.D. Ill. 2004) ("An advisory

opinion results if the court resolves a question of law that is not presented by the facts of the case.").

The other constitutional infirmity with Benjamin's challenge is that he lacks standing to bring it. To establish standing, Benjamin must show that (1) he "has suffered or likely will suffer an injury in fact," (2) "the injury likely was caused or will be caused by the defendant," and (3) "the injury likely would be redressed by the requested judicial relief." *All. for Hippocratic Med.*, 602 U.S. at 380. Benjamin doubtless suffered a cognizable injury when the SSA denied his application for benefits. But his case falters at the second and third requirements—"causation and redressability"—which "are often flip sides of the same coin." *Id.* To satisfy them, Benjamin must show a likelihood, as opposed to a speculative possibility, that his "injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotations omitted).

He has not. Again, even if this Court remanded the case and directed the ALJ to ignore SSR 24–3p, Benjamin has offered nothing to suggest that his injury would be redressed; the effect of this Court's judgment on Benjamin's application would thus be purely speculative.[4] *Id.* In fact, as the Commissioner observes, it might make Benjamin worse off. That's because the application of SSR 24–3p to Benjamin's case led the ALJ to elicit *more* information from the vocational expert, not less. (*See* Comm'r Br. 9.) Likewise, Benjamin's core objection to SSR 24–3p is that it subjects

---

[4] Nowhere in the argument section of Benjamin's brief is there a single citation to the administrative record. The notable absence of a discussion about any aspect of the ALJ's opinion confirms that Benjamin was not injured by SSR 24–3p. An identical brief could have been filed in virtually any other social security appeal in which the claimant made it past step four.

claimants' attorneys to the risk that they will forfeit challenges to vocational expert testimony by failing to object at the hearing. But Benjamin does not take issue with how the vocational expert testified in his case. He has thus forfeited nothing, and SSR 24–3p has made him no worse off.

Aside from the constitutional problems, the APA does not authorize Benjamin's challenge either.[5] The APA authorizes suit only by "[a] person suffering legal wrong because of agency action" or by a person "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Accordingly, "a litigant cannot bring a claim unless and until she suffers an injury." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024). But not just any injury. The APA requires plaintiffs to demonstrate a "sufficient causal connection between the agency action and the injuries alleged." *Cornell Vill. Tower Condo. v. Dep't of Hous. & Urb. Dev.*, 750 F. Supp. 909, 919 n.5 (N.D. Ill. 1990). For the reasons already given, Benjamin has failed to demonstrate a causal connection between the adoption of SSR 24–3p and the denial of his application.

Finally, the harmless-error doctrine applies equally to social security appeals. Under that doctrine, courts should refrain from remanding proceedings to the SSA if doing so would "not affect the outcome" of the case. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Benjamin has not shown that the proceedings on remand

---

[5] A threshold question—not addressed by either party—is whether the APA applies at all. APA review is only available to challenge agency actions "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The Social Security Act's judicial-review provision may well be such an "adequate remedy" and thus foreclose APA review. *See* 42 U.S.C. § 405(g). But the Court need not dwell on the point.

would change if the ALJ did not apply SSR 24–3p at step five. So even assuming the ALJ erred by applying that ruling, Benjamin has made no attempt to demonstrate that it drove the SSA's decision.[6]

For all these reasons, the Court cannot entertain Benjamin's arguments. The Court notes, however, that the Seventh Circuit has classified SSRs as "interpretive rules intended to offer guidance to agency adjudicators." *Lauer*, 169 F.3d at 492; *see also Lauer v. Bowen*, 818 F.2d 636, 639–40 (7th Cir.1987). This characterization strongly suggests that SSR 24–3p is not subject to the strictures of the APA's notice-and-comment process. No surprise, then, that every APA challenge to an SSR that this Court can find has failed. *See, e.g.*, *White*, 7 F.3d at 304 (concluding that "SSR 82–31 is an interpretive as opposed to a legislative rule" and thus "not subject to the notice and comment requirements of the APA"); *Bailey v. Bowen*, 699 F. Supp. 51, 53 (M.D .Pa.1988) (finding SSR 82–55 interpretive ruling not subject to APA's notice and comment requirements); *Jackson v. Heckler*, 580 F. Supp. 1077, 1081 (E.D. Pa. 1984) (upholding SSR 82–55 against APA challenge); *Hall*, 602 F. Supp. at 1180. ("SSR 82–

---

[6] Benjamin seeks to remedy this defect in his reply brief. (*See* Pl. Reply 1–3.) This is problematic: "[A]rguments raised for the first time in" a party's "reply brief are waived." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). Even so, Benjamin's attempt falls short. He states that SSR 24–3p harmed him because of the "element of surprise"—that is, the Ruling "surprise[es] representatives with any number of job sources, to which the [SSA] now says representatives cannot raise questions or challenges about post hearing." (Pl. Reply 2.) But he does not argue that he was surprised in *his case*. Indeed, the hearing transcript suggests otherwise. At the end of the hearing, the ALJ inquired into the expert's methods; the expert responded that he used the DOT, the OWES, and a proprietary software. (Doc. 12 at 73–74.) Following this explanation, the ALJ asked Benjamin's counsel whether he had any questions, and he responded that he did not. (Doc. 12 at 75.) Thus, Benjamin's counsel did not raise any objections to the expert's testimony at the hearing, which generally operates as a waiver. *See Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) ("[A] claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections.). And on appeal, Benjamin does not identify any flaws with how the expert testified in his case. Nor does he argue that the expert's testimony conflicted with the DOT and that—were SSR 00–4p still in place—the ALJ would have been required to resolve the conflict. In short, he has not demonstrated that SSR 24–3p harmed his case.

55 merely states what the Secretary thinks it means in the form of guidelines; it does not add anything to the underlying regulation."); *Bailey*, 885 F.2d at 62 (concluding that SSR 82–55 "represents the type of interpretation which the Secretary has discretion to announce"). Benjamin cites no authority to the contrary.

## CONCLUSION

The Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter judgment and close this case.

*So ordered.*

Entered this 10th day of June 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge

14